**OFFICE OF THE COMPTROLLER GENERAL OF the REPUBLIC OF BOLIVIA on Behalf of the GENERAL COMMAND OF the BOLIVIAN AIR FORCE, and Central Bank of Bolivia Plaintiffs–Appellants,**

v.

**Bernard Larry TRACTMAN Defendant–Appellee.**

**No. 88 Civ. 3088 (MGC).**

United States District Court, S.D. New York.

Nov. 7, 1989.

---

Gibson, Dunn & Crutcher, by Mitchell A. Karlan, New York City, for plaintiffs-appellants.

Thomas Torto, Brooklyn, N.Y., for defendant-appellee.

## OPINION AND ORDER

CEDARBAUM, District Judge.

The Office of the Comptroller General of the Republic of Bolivia (Bolivia) appeals from the judgment of the United States Bankruptcy Court (Hon. Prudence B. Abram), overruling Bolivia's objection to the petition of the debtor, Bernard Larry Tractman, for a discharge under Chapter 7 of the Bankruptcy Code. Bolivia holds an unsatisfied judgment of $33.01 million against Tractman for the conversion of promissory notes. This court has jurisdiction over Bolivia's appeal pursuant to 28 U.S.C. § 158(a).

Bolivia contends that sections 727(a)(3) and (5) of the Bankruptcy Code, 11 U.S.C. §§ 727(a)(3) and (5), bar discharge of Tractman's debts because he failed to keep, preserve, or produce records of his business transactions, and "failed to explain satisfactorily" his disposition of the promissory notes. The bankruptcy court rejected Bolivia's objection to discharge on the ground that the record-keeping provisions of section 727 do not apply to the disposition of Bolivia's promissory notes and that Tractman's oral explanation of the disposition of the notes was satisfactory. The court emphasized that the promissory notes were not property of the debtor in light of the prior district court holding that the notes belonged to Bolivia. *Office of the Comptroller General of the Republic of Bolivia v. International Promotions and Ventures, Ltd.*, 618 F.Supp. 202 (S.D.N.Y. 1985). Since the notes were not part of the debtor's estate, the court reasoned that the debtor had no duty to produce records showing what he did with them. Without referring to section 727(a)(5), Judge Abram appears to have found Tractman's oral explanation of the disposition of the notes adequate, although she did conclude that Tractman's version of the events was "somewhat vague and in some way imprecise." (Transcript of Oral Opinion, Feb. 26, 1988, at 24.). However, section 727(a)(3) makes complete disclosure a condition precedent to discharge and this disclosure requirement applies to all of the debtor's business transactions from which his financial condition may be ascertained including the disposition of promissory notes. Therefore, the decision of the bankruptcy court is vacated and the case is remanded for a determination of whether section 727(a)(3)'s disclosure requirements have been satisfied.

"We begin with the well-accepted principle that the Bankruptcy Act was intended to permit the honest debtor to get a

new start in life free from debt, and that section 14 of the Act [now section 727 of the Bankruptcy Code [1]] must be construed strictly against the objectors and liberally in favor of the bankrupt." *In Re Aldman*, 541 F.2d 999, 1003 (2d Cir.1976) (citations omitted). Discharge will be denied only if the debtor's conduct is covered by one of the provisions of section 727 of the Bankruptcy Code. Section 727(a)(3) provides that discharge will be denied when

> the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

11 U.S.C. § 727(a)(3). The standard for disclosure by a debtor under this provision was announced by the Second Circuit in *In Re Underhill*, 82 F.2d 258, 259–60 (2d Cir.), *cert. denied sub nom Underhill v. Lent*, 299 U.S. 546, 57 S.Ct. 9, 81 L.Ed. 402 (1936). In that case, the Second Circuit denied a discharge because the debtor had failed to keep books or records from which his business transactions and financial condition could be ascertained. *Id.* at 260. More specifically, the court denied a discharge because the debtor had failed to keep records showing the disposition of the property of the trusts for which he was a trustee as well as the disposition of his own property. The court emphasized that what constitutes sufficient record keeping varies with the facts of each case, but in all cases complete disclosure is required.

> The law is not unqualified in imposing a requirement to keep books or records, and it does not require that if they are kept they shall be kept in any special form of accounts. It is a question in each instance of reasonableness in the particular circumstances. Complete disclosure is in every case a condition precedent to the granting of the discharge, and if such disclosure is not possible

without the keeping of books or records, then the absence of such amounts to that failure to which the act applies.

*Id.* at 259–60 (citations omitted). While the debtor may justify his failure to keep records in some cases, a discharge may be granted only if the debtor presents an accurate and complete account of his financial affairs.

> The purpose and intent of section 14b of the Bankruptcy Act [now renumbered section 727 of the Bankruptcy Code] is to make the privilege of discharge dependent on a true presentation of the debtor's financial affairs. It was never intended that a bankrupt, after failure, should be excused from his indebtedness without showing an honest effort to reflect his entire business and not a part merely. To be sure, there may be records which are not books; but it is intended that there be available written evidence made and preserved from which the present financial condition of the bankrupt, and his business transactions for a reasonable period in the past may be ascertained.

*Id.* at 260.

The standard for record keeping and disclosure established in *In Re Underhill* still applies. *See, e.g. In Re Miller*, 97 B.R. 760, 763 (Bankr.W.D.N.Y.1989) (*"In Re Underhill*, 82 F.2d 258 (2nd Cir.1936), a case decided by the Second Circuit under the Bankruptcy Act, established a standard for record keeping which still applies."); *In Re Usoskin*, 56 B.R. 805, 815 (Bankr.E.D. N.Y.1985) ("The governing principles [regarding the debtor's duty to keep and preserve records] were lucidly expounded by the Second Circuit in *In Re Underhill*, 82 F.2d 258 (2d Cir.), *cert. denied*, 299 U.S. 546, 57 S.Ct. 9, 81 L.Ed. 402 (1936), an opinion which neither time nor the Code has in any way devitalized."). *See also Baker v. Trachman*, 244 F.2d 18, 19 (2d Cir.1957) (debtor's "records were insufficient to ascertain 'his business transactions for a reasonable period in the past,' and under the rule of *Matter of Underhill*, 2

---

**1.** While changes have been made to section 727(a)(3), they have not altered the effect of the

substantive law established under section 14 of the Bankruptcy Act of 1938.

Cir., 1936, 82 F.2d 258 if records were necessary, his discharge should be barred.")

The complete disclosure requirement of *In Re Underhill* extends to all material business transactions of the debtor, including those pertaining to another's property, such as trust property or promissory notes. As a leading treatise explains:

> Under section 727(a)(3), it is not sufficient that merely the debtor's financial condition be ascertainable from his books or records; they must also disclose material "business transactions." A proper record of past business transactions for a reasonable period of time has always been required under this clause. It is because of the interest which creditors have in the debtor's "business transactions" that he is required to "preserve" books or records. Thus, when the records fail to explain business transactions whereby a large shrinkage of assets result[s], a discharge should be refused upon the ground of failure to keep proper books and records.

4 Collier on Bankruptcy ¶ 727.03, at 727–46–47.

The bankruptcy court erred by not applying the section 727(a)(3) disclosure requirement to the promissory note transaction of the debtor. The court did not consider whether there had been sufficient disclosure regarding the notes because it concluded that section 727(a)(3) applied only to property of the bankrupt's estate. "The complaint basically uses 727 generally in a way that predicates Mr. Tractman's dealings with the notes that are in dispute as if they [are] property of the estate. I am of the view that I must take the position that they are not in fact property of the estate." (Transcript of Oral Opinion, Feb. 26, 1988, at 18–19.) The court reasoned that once the notes had been adjudicated to be the property of the Bolivian government, they could not be considered property of the debtor's estate and therefore the requirements of section 727(a)(3) did not apply. However, neither the language of the statute nor the decisions thereunder suggest such a limitation. *In Re Underhill* and the

statute itself make clear that section 727(a)(3)'s complete disclosure requirement extends beyond the property of the estate to include all "business transactions" which shed light on the financial condition of the debtor. Clearly the transfer by the debtor of $33.01 million of promissory notes constitutes a financial transaction for which complete disclosure is required. Indeed, any money or property received by the debtor in exchange for the notes might be property of the estate. The bankruptcy court erred by refusing to consider whether the debtor had provided sufficient information regarding his illegal disposition of the notes to satisfy section 727(a)(3).

There is a dispute between the parties as to whether sufficient records were produced. Bolivia insists that the debtor has produced no records concerning the promissory notes or any of his other business dealings. (Appellant's Brief at 23.) In contrast, the debtor maintains that Bolivia obtained all of his financial records at his deposition and when it subpoenaed his tax records from Citibank in New York. (Transcript of Pre–Trial Conference, Sept. 28, 1987, at 21.) The testimony of the trustee before the bankruptcy court suggests that no records regarding the notes were provided to the trustee by the debtor, but apparently few were requested and the debtor told the trustee that all of his records were already in the possession of Gibson, Dunn & Crutcher, Bolivia's attorneys. The trustee also testified that no motion to compel the debtor to produce documents was ever made. (Transcript of Trial, Feb. 24, 1988, at 16–17.) In addition, the court clearly stated that the trustee had no interest in tracking down the notes because they were not part of the estate (Transcript of Pre–Trial Conference, Sept. 28, 1987, at 49.).

In sum, even if Judge Abram intended to make a finding under section 727(a)(5) that debtor's oral testimony provided a satisfactory explanation, she failed to address the separate section 727(a)(3) requirement of complete disclosure. As the Second Circuit stated in *In Re Underhill*, "[r]ecords of substantial completeness and accuracy are required so that they may be checked

against the mere oral statement or explanations made by the bankrupt." 82 F.2d at 260 (citations omitted). I therefore vacate debtor's discharge and remand this case to the bankruptcy court for a determination of what records, if any, have been produced by the debtor, and whether the debtor has satisfied the requirement of complete disclosure.

SO ORDERED.