**In re Rodney S. MAYO, Debtor.**

**CHITTENDEN TRUST COMPANY, Plaintiff,**

**v.**

**Rodney S. MAYO, Debtor, and Timothy J. Wells, Trustee, Defendants.**

**Bankruptcy No. 86–00146.**
**Adv. No. 87–0065.**

United States Bankruptcy Court,
D. Vermont.

Dec. 7, 1988.

G. Crawford, O'Neill and Crawford, Burlington, Vt., for Rodney S. Mayo, debtor.

R. Davis and J. Palmisano, Barre, Vt., for Chittenden Trust Co.

Timothy J. Wells, White River Junction, Vt., pro se.

**MEMORANDUM DECISION [1] DETERMINING STANDARD OF PROOF UNDER 11 USC § 727(a)**

FRANCIS G. CONRAD, Bankruptcy Judge.

After Debtor's September 1, 1987 conversion from Chapter 11 to Chapter 7, 11 U.S.C. §§ 101, *et seq.*, Chittenden initiated an adversary proceeding on December 18, 1987 opposing Debtor's discharge under 11 U.S.C. § 727.[2] The filed complaint is with-

---

1. We have jurisdiction to hear this matter under 28 U.S.C. § 1334(b) and the general reference to us by the U.S. District Court of Vermont under VLBR 7012(a)(1). It is a core matter under 28 U.S.C. § 157(b)(2)(I) and (J). This Memorandum Decision constitutes findings of fact and conclusions of law under Rules of Practice and Procedure in Bankruptcy Rule 7052.

2. 11 U.S.C. § 727, **Discharge,** provides in pertinent parts:
   (a) The court shall grant a debtor a discharge, unless—

   .    .    .    .    .
   (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mu-

tilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
   (A) property of the debtor, within one year before the date of the filing of the petition; or
   (B) property of the estate after the date of the filing of the petition;
   (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;
   (4) the debtor knowingly and fraudulently, in or in connection with the case—
   (A) made a false oath or account;
   (B) presented or used a false claim;

in sixty days of the October 30, 1987 date set for the § 341(a) first meeting of creditors and thus, within the requirement of Rules of Practice and Procedure in Bankruptcy Rule 4004(a).[3] Additionally, Chittenden sought an exception to Debtor's discharge for its debts under 11 U.S.C. § 523.[4] Chittenden's § 523 and § 727 complaint is timely within the requirements of Rules of Practice and Procedure in Bankruptcy Rules 4007(a) and 4007(b).[5] Its timeliness disposes of Debtor's first affirmative defense that Chittenden's complaint cannot be maintained before us because we lack jurisdiction over the subject matter since the complaint was not filed timely pursuant to Rule 4007(c). We note further that Bankruptcy Rule 4007(c) fixes the time for

(C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or

(D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs;

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities;

(6) the debtor has refused, in the case—

(A) to obey any lawful order of the court, other than an order to respond to a material question or to testify;

(B) on the ground of privilege against self-incrimination, to respond to a material question approved by the court or to testify, after the debtor has been granted immunity with respect to the matter concerning which such privilege was invoked; or

(C) on a ground other than the properly invoked privilege against self-incrimination, to respond to a material question approved by the court or to testify; ...

3. Rules of Practice and Procedure in Bankruptcy Rule 4004, **Grant or Denial of Discharge,** provides in pertinent parts:

(a) **Time for Filing Complaint Objecting to Discharge; Notice of Time Fixed.** In a chapter 7 liquidation case a complaint objecting to the debtor's discharge under § 727(a) of the Code shall be filed not later than 60 days following the first date set for the meeting of creditors held pursuant to § 341(a) ...

(b) **Extension of Time.** On motion of any party in interest, after hearing on notice, the court may extend for cause the time for filing a complaint objecting to discharge. The motion shall be made before such time has expired.

(c) **Grant of Discharge.** In a chapter 7 case, on expiration of the time fixed for filing a complaint objecting to discharge, the court shall forthwith grant the discharge unless ... (2) a complaint objecting to the discharge has been filed ...

(d) **Applicability of Rules in Part VII.** A proceeding commenced by a complaint objecting to discharge is governed by Part VII of these rules ...

4. 11 U.S.C. § 523, **Exceptions to discharge,** provides in pertinent parts:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive; ...

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

(c) Except as provided in subsection (a)(3)(B) of this section, the debtor shall be discharged from a debt of a kind specified in paragraph (2), (4), or (6) of subsection (a) of this section, unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge under paragraph (2), (4), or (6), as the case may be, of subsection (a) of this section ...

5. Rules of Practice and Procedure in Bankruptcy Rule 4007, Determination of Dischargeability of a Debt, provides in pertinent parts:

(a) **Persons Entitled To File Complaint.** A debtor or any creditor may file a complaint with the court to obtain a determination of the dischargeability of any debt.

(b) **Time for Commencing Proceeding Other Than Under § 523(c) of the Code.** A complaint other than under § 523(c) may be filed at any time. A case may be reopened without payment of an additional filing fee for the purpose of filing a complaint to obtain a determination under this rule ...

(e) **Applicability of Rules in Part VII.** A proceeding commenced by a complaint filed under this rule is governed by Part VII of these rules.

filing a § 523 complaint and not a § 727 complaint. Although generally well plead, the complaint did not specify the specific subsection of § 523(a). We read this portion of the complaint to be under §§ 523(a)(2) and (4). If counsel for the plaintiff disagrees with our interpretation, they may advise us before trial.

As an affirmative defense to Chittenden's complaint, Debtor raised Rules of Practice and Procedure in Bankruptcy Rule 4007(c). The sixty (60) day statute of limitations under 4007(c) pertains only to § 523(a)(2), (4), and (6) complaints. In this proceeding only § 523(a)(4) is alleged. Since we have found the complaint to have been filed within sixty (60) days of the § 341(a) hearing, we find the Rule 4007(c) affirmative defense is without merit and is dismissed.

Specifically, Chittenden's § 727 and § 523 complaint alleges, and Debtor denies, seven counts within its complaint which are summarized as follows:

1. *"Pre–Petition Debt And Security,"* Prior to Debtor's Chapter 11 petition, Chittenden made secured loans in excess of $4.8 million which are outstanding although duly demanded to be repaid;

2. *"Post–Petition Debt And Security,"* Chittenden was induced by Debtor's representations to extend $250,000.00 of post-petition financing to Burlington Lincoln Mercury, Inc. (BLM), a company in which the Debtor was a principal. This financing was embodied in a "so Ordered" stipulation dated October 31, 1987;

3. *"FMCC's $7 Million of Receipts,"* Between August of 1986 and May of 1987, Debtor authorized Ford Motor Credit Company (FMCC) to receive and FMCC did receive proceeds of collateral in the sum of $6,856,157.57. Some of the collateral received by FMCC may belong to Chittenden;

4. *"Improper Accounting,"* Debtor failed to account properly for money received by FMCC in operating reports required to be filed with the Court. Some of the sums received by FMCC may have included the proceeds of Chittenden's pledged collateral;

5. *"Conversion,"* The above transactions between the Debtor and FMCC were a fraud or defalcation by the Debtor while acting in a fiduciary capacity and embezzlement or larceny of Chittenden's collateral;

6. *"Franchises,"* Debtor entered into negotiations with Ford Motor Company (FMC) and FMCC to obtain Ford franchises personally to the "detriment of the Debtor, BLM" as well as Chittenden, and Debtor knowingly and fraudulently offered or attempted to obtain money, property or advantage or a promise of money, property or advantage for acting or forebearing to act with respect to the Ford franchise or dealership; and,

7. *"Hinder, Delay or Defraud,"* Debtor, with intent to hinder, delay, or defraud Chittenden, has transferred, destroyed, concealed or permitted property of the estate to be so transferred. Debtor has either destroyed, concealed or failed to keep or preserve recorded information, books, documents, records and papers from which Debtor's financial condition or business transactions might have been ascertained, and failed to explain the loss of the Ford franchises or other deficiency of assets to meet Debtor's liabilities, and, refused to obey lawful direction of the Court to file monthly operating statements.

Chittenden's complaint concludes with a prayer for a § 523 exception to discharge for the balances of all of its loans, advances and other financial accommodations extended to the Debtor as well as a § 727 order denying Debtor's discharge in bankruptcy.

Aside from the lack of subject matter jurisdiction affirmative defense under Rules of Practice and Procedure in Bankruptcy Rule 4007(c) which we previously disposed of, Debtor raised the following affirmative defenses: The complaint fails to state a claim upon which relief can be

granted; insufficiency of process; insufficiency of service of process; illegality; fraud; estoppel; assumption of risk; contributory negligence; laches; and, waiver. The validity and applicability of these defenses remain to be proven at trial.

## ISSUE PRESENTED

■ After an adequate discovery period had passed, we held a final pre-trial hearing on August 8, 1988 and entered a final pre-trial Order on August 10, 1988. At the final pre-trial conference both parties raised the issue about the measure of proof in the § 727 complaint. No party questioned the measure of proof we expounded on the § 523(a) issue, namely the measure would be by clear and convincing evidence. At their request for a resolution within this jurisdiction on the appropriate measure of proof Chittenden must meet to sustain its § 727 objections to Debtor's discharge, *i.e.*, whether the appropriate standard is by mere preponderance or by clear and convincing evidence, we reserved the matter *sub judice* in our final pre-trial Order for a later decision.

Although the parties did not brief the issue on the appropriate measure of proof required under § 523, they cited § 523 cases for support of their respective positions on the appropriate evidentiary burden under § 727. Like § 727, the nondischargeability provisions of § 523 do not provide expressly for the measure of the burden of proof.

In construing § 523 objections, Courts, however, have consistently placed this responsibility on the creditor's shoulders, *Household Finance Corp. v. Danns (In re Danns)*, 558 F.2d 114, 116 (2d Cir.1977), and, at least in the context of fraud as alleged by Chittenden through its count 5, this District requires it be met by clear and convincing proof. *First Vermont Bank & Trust Company v. Tashman (In re Tashman)*, 21 B.R. 738, 741 (Bkrtcy.D.Vt.1982) (§ 523(a)(2)(B) ("the fraud contemplated within the dischargeability exception must be proven by clear and convincing evidence ...") (citations omitted); *Fredette v. Golowaty (In re Golowaty)*, 13 B.R. 781, 784

(Bkrtcy.D.Vt.1981) (creditor assumes heavy burden to come within exception of § 523(a)(2)(A)). *Compare, Driggs v. Black (In re Black)*, 787 F.2d 503, 505–06 (10th Cir.1986) (Construing §§ 523(a)(2)(A) and (a)(2)(B), the *Driggs* Court held exceptions to discharge are construed narrowly, and the burden of proof is on the party opposing discharge by clear and convincing evidence), *Accord, Lussier v. Barrup (In re Barrup)*, 37 B.R. 697 (Bkrtcy.D.Vt.1983); *Schweig v. Hunter (In re Hunter)*, 780 F.2d 1577, 1579 (11th Cir.1986) (§ 523(a)(2)(B)); *In the Matter of Bogstad*, 779 F.2d 370, 372 (7th Cir.1985); *First National Bank of Red Bud v. Kimzey (In re Kimzey)*, 761 F.2d 421, 423–24 (7th Cir. 1985) (§ 523(a)(2)(A)); *Martin v. Bank of Germantown (In re Martin)*, 761 F.2d 1163, 1165 (6th Cir.1985); *Calumet National Bank v. Gallagher (In re Gallagher)*, 72 B.R. 830, 834 (Bkrtcy.N.D.Ind. 1987) (§ 523(a)(2)(B)). *But see, Combs v. Richardson*, 838 F.2d 112, 116 (4th Cir. 1988) (§ 523(a)(6)) (Acknowledging that Courts are divided on the appropriate standard of proof, the *Richardson* panel squares the *fresh start* of the Bankruptcy Code by holding the preponderance standard is the appropriate standard in a § 523(a)(6) proceeding. "[t]hat the policies of the Bankruptcy Code are best effectuated by requiring that creditors prove by a preponderance of the evidence the willfulness and maliciousness of the debtor's acts under § 523(a)(6) and by waiting for Congress, not the courts, to signal a departure from this standard."); *Bottari v. Baiata (In re Baiata)*, 12 B.R. 813, 817 (Bkrtcy.E. D.N.Y.1981) (reached same conclusion under § 523(a)(2)(B)).

Courts can use the § 523 cases to analyze the § 727 burden of proof requirement but it should be clearly understood, however, that § 523 causes of action are dissimilar statutory creatures from § 727 causes of action. On hierarchical scale, a § 727 complaint compares in prerogative to the strength of Zeus. While all gods in Greek mythology had their separate dwellings, and each their respective strengths and weaknesses, when summoned, each repaired to the palace of Zeus, the father of

gods and men. Section 523 complaints may bar one or more debts from discharge, but when § 727 is summoned it has the portent to bar all debts from discharge. The § 727 burden of proof issue must be analyzed with this paramount concept in mind.

## DISCUSSION

The Code is silent about the appropriate measure of proof a plaintiff must demonstrate on its § 727 objection to a debtor's otherwise presumed discharge. In the regrettable, and perhaps unexcusable, continued absence of express statutory direction, we turn to § 727's legislative history:

> **This section is the heart of the fresh start provisions of the bankruptcy law.** Subsection (a) requires the court to grant a debtor a discharge unless one of eight (ten) conditions is met ...

> The next three grounds for denial of discharge center on the debtor's wrong doing in or in connection with the bankruptcy case. They are derived from Bankruptcy Act section 14c.[6] If the debtor, with intent to hinder, delay, or defraud his creditors or an officer of the estate, has transferred, removed, destroyed, mutilated, or concealed, or has permitted any such action with respect to, property of the debtor within the year preceding the case, or property of the estate after the commencement of the case, then the debtor is denied discharge. (§ 727(a)(2)). The debtor is also denied discharge if he has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any books and records from which his financial condition might be ascertained, unless the act or failure to act was justified under all the circumstances of the case. (§ 727(a)(3)). **The fourth ground for denial of discharge is the commission of a bankruptcy crime,** though the standard of proof is preponderance of the evidence rather than proof beyond a reasonable doubt. These crimes include the making of a false oath or account, the use or presentation of a false claim, the giving or receiving of money for acting or forbearing to act, and the withholding from an officer of the estate entitled to possession of books and records relating to the debtor's financial affairs. (§ 727(a)(4)).

> The fifth ground for denial of discharge is the failure of the debtor to explain satisfactorily any loss of assets or deficiency of assets to meet the debtor's liabilities. (§ 727(a)(5)) ...

House Report No. 95–595, 95th Cong., 1st Sess. 384 (1977); Senate Report No. 95–989, 95th Cong., 2d Sess. 98 (1978) U.S. Code Cong. & Admin.News 1978, pp. 5787, 5884, 6340; reprinted in 4 Norton Bankr. Code L. & Prac.Pamphlet 1987–1988 Ed., pages 529–530. (Parentheticals, footnote, and emphasis supplied).

We held in *In re Shebel,* 54 B.R. 199 (Bkrtcy.D.Vt.1985), within the context of a § 727(a)(4)(A) false oath case, that the objecting creditor must prove by a preponderance of the evidence that the debtor made the false statement (oath) fraudulently, *id.,* at 203. Although not stated explicitly, our reason for holding the creditor to the preponderance standard was reliance on the legislative history quoted *supra.* Our holding in *Shebel, supra,* was limited to a § 727(a)(4)(A) false oath complaint. Chittenden's § 727 encompasses §§ 727(a)(2), (3), (5), and (6)(A). Therefore, we must decide the burden issue on a broader, albeit still limited, continuum.

Before we proceed to discuss whether Chittenden's burden under its § 727 complaint is either by clear and convincing, or

---

**6.** Section 14(c) of the Bankruptcy Act, 11 U.S.C. § 32(c), provides in part:

The court shall grant the discharge unless satisfied that the bankrupt has ... (2) destroyed, mutilated, falsified, concealed, or failed to keep or preserve books of account or records, from which his financial condition and business transactions might be ascertained, unless the court deems such acts or failure to have been justified under all the circumstances of the case;

... **Provided,** That if, upon the hearing of an objection to a discharge, the objector shall show to the satisfaction of the court that there are reasonable grounds for believing that the bankrupt has committed any of the acts which, under this subdivision, would prevent his discharge in bankruptcy, then the burden of proving that he has not committed any of such acts shall be upon the bankrupt.

preponderance of the evidence, or some combination of both, we pause to examine the historical changes in the burden allocation, and, in this way, hopefully avoid confusing the allocation of the burden of proof now governed by Rules of Practice and Procedure in Bankruptcy Rule 4005,[7] with the proper degree of proof necessary to survive a debtor's motion for a directed verdict.

In *Matter of Tabibian*, 289 F.2d 793, 795 (2d Cir.1961) the Second Circuit used "prima facie case" and "reasonable grounds" in a case involving false oath under former Bankruptcy Act § 14(c)(7):

> The general rule as to the burden of proof in a contested discharge is that the objectors must make a **prima facie** case, i.e., establish "reasonable grounds for believing" that there was fraud, etc., at which point the burden shifts to the bankrupt to "satisfactorily explain" the questioned transactions ... It is true that a discharge is a privilege granted the honest debtor and not a right accorded to all bankrupts. In weighing the facts put forward in a contest over a discharge, however, a court should keep in mind the beneficial policy allowing the honest debtor to get a new start in business and life—and should construe § 14 strictly against the objectors and liberally in favor of the bankrupt.

*Id.* Several years later, the Second Circuit, in *Matter of Freudmann*, 495 F.2d 816, 817 (2d Cir.1974) *aff'ing Per Curiam* 362 F.Supp. 429 (S.D.N.Y.1973), *cert. denied*, 419 U.S. 841, 95 S.Ct. 72, 42 L.Ed.2d 69 (1974), held "reasonable grounds" was sufficient proof under Section 14(c)(4) (11 U.S. C. § 32(c)(4), the predecessor of § 727(a)(2)(A)), and affirmed the lower Court's finding of actual intent to defraud under former Bankruptcy Act § 14(c).[8] Upon a proper showing, the burden shifted to the bankrupt to prove that he had not committed the act(s) so charged:

Once the evidence established 'reasonable grounds' to believe that Freudmann committed acts to hinder, delay, or defraud his creditors, the burden of proving that he had not committed such acts shifts to Freudmann ... We do not believe that the courts below erred in finding that Freudmann's mere denials of fraudulent intent fell short of sustaining his burden.

*Id.* See also, *Morris Plan Industrial Park v. Finn*, 149 F.2d 591, 592 (2d Cir. 1945) (Bankrupt has burden of defense to show an honest effort to include property in which he had an interest.); *Diorio v. Kreisler–Borg Construction, Co. (In re Diorio)*, 407 F.2d 1330 (2d Cir.1969). Thus, the proviso of Section 14(c) was interpreted as not only shifting the burden of going forward with the evidence, but also as shifting the ultimate burden of persuasion to the bankrupt once the "prima facie" case of non-entitlement to a discharge was made by the objector. *In re Melnick*, 360 F.2d 918, 919–20 (2d Cir.1966); *Matter of Decker*, 595 F.2d 185, 188 (3d Cir.1979); *Feldenstein v. Radio Distributing Co.*, 323 F.2d 892, 893 (6th Cir.1963); *Johnson v. Bockman*, 282 F.2d 544, 545 (10th Cir.1960). In *In re Melniker Hammock MFG. Co., Inc.*, 45 F.2d 703, 704–05 (2d Cir.1930), the Second Circuit noted the respective burdens under the 1926 Act Amendments:

> With the proof standing thus, (i.e., after the creditor shows the defendant has committed the acts accused of) the act as amended in 1926 expressly requires the bankrupt to take up the burden of proving 'that he has not committed any of such acts.' It was error to hold the objecting creditors to a higher standard of proof in support of their specifications than the amendment of 1926 requires and to dismiss a specification, 'reasonable grounds for believing' having been shown, until the bankrupt discharged the burden which the amendment cast upon it and proved by a preponderance of the

---

**7.** Rules of practice and procedure in Bankruptcy Rule 4005, **Burden of Proof in Objecting to Discharge,** provides:

At the trial on a complaint objecting to discharge, the plaintiff has the burden of proving his objection.

**8.** *See,* footnote 6.

evidence that none of such disentitling acts had in fact been committed. (parentheticals supplied for clarity).

*Id. Accord, In re Saphire,* 139 F.2d 34, 35 (2d Cir.1943) ("The provisions of the (1926) amendment have been substantially retained under the Act of 1938.") (parenthetical supplied); *In re Michel,* 56 F.2d 15, 16 (2d Cir.1932) (false oath case where the debtor's failure to explain was fatal since "[H]e could easily have furnished evidence to explain all these matters and should have done so if he was to obtain a discharge.") *See also, Federal Provision Co., Inc. v. Ershowsky,* 94 F.2d 574, 575 (2d Cir.1938), noting the provision of Section 14(b) was significantly amended by Act May 27, 1926, § 6, 11 U.S.C. § 32(b), where:

> 11 USC § 32(b) puts the burden of proof on the bankrupt when the creditor has shown reasonable ground for the belief that the bankrupt has 'committed' any of the 'acts' which will bar his discharge. This was added in 1926, until when the creditor had the burden of proof throughout ...

> The amendment of 1926 has revolutionized the procedure in discharge; the bankrupt may no longer remain inert, standing upon the infirmities of the evidence against him; once a prima facie case appears, the laboring oar passes to his hands and he must bring the boat to shore. It is he who has caused the loss, who has access to the facts, and who alone knows what the explanation is; let him make it, let him satisfy the court that it really explains. Else he will not be discharged.

*Id.; Widder v. Seiff,* 94 F.2d 6, 7 (2d Cir. 1938) (obtaining money by false financial statement in writing under Section 14(b)(3) of the Bankruptcy Act, as amended, 11 U.S.C. § 32(b)(3) where burden was on the bankrupt under the proviso of Section 14(b) and the transaction itself gave reasonable grounds for supposing that the objections

had been proved); *Turner v. Bass,* 267 F.2d 308, 310 (9th Cir.1959).

As explained by the Second Circuit in a footnote in *Matter of Martin,* 554 F.2d 55, 58 n. 1 (2d Cir.1977), the "prima facie case" and "reasonable grounds" tests and the accompanying shifts in the burden of proof allocations enunciated in earlier *Tabibian, Freudmann, Melnick,* and *Ershowsky,* decisions, *supra,* fell by the wayside with the advent of former Bankruptcy Rule 407:[9]

> The proviso at the end of § 14c placed the burden of proof on the bankrupt once the objector made a prima facie case ... This proviso has been superseded by Bankruptcy Rule 407, under which the burden of persuasion remains always on the objector.

*Matter of Martin, supra,* 554 F.2d at 58 n. 1 (2d Cir.1977). *Accord, Matter of Decker,* 595 F.2d 185, 188 (3d Cir.1979).

Under Rule 407, the plaintiff had the burden of proving facts essential to the objection beyond the prior statutory showing of reasonable grounds and adduce proof which would establish that the debtor committed the complained of act before the burden of going forward with the evidence shifted to the debtor. Once the plaintiff had produced proof sufficient to survive a directed verdict motion, the debtor, in turn, had to rebut with justification under § 727(a)(3) or disprove the charge to the Court's satisfaction.

The burden of going forward with the evidence and the burden of persuasion are often confused by judges and litigants alike. Once the proponent has satisfied the initial burden of going forward, the burden of production shifts to the opponent. It is the burden of production that shifts, not the ultimate burden of persuasion, i.e., the burden of persuasion remains with the proponent. *See e.g., McCormick on Evidence* §§ 336, 338 (3d Ed.1984).

Rules of Practice and Procedure in Bankruptcy Rule 4005, **Burden of Proof in Ob-**

---

9. Bankruptcy Rule 407, effective October 1, 1973 provided:
  At the trial on a complaint objecting to a discharge, the plaintiff has the burden of proving the facts essential to his objection.

The Advisory Committee Note to then Rule 407 states: "The rule supersedes the proviso at the end of § 14c of the Act."

jecting to Discharge, clearly places the burden of proof for a § 727 objection to discharge on the objector: "At the trial on a complaint objecting to a discharge, the plaintiff has the burden of proving the objection." The 1983 Advisory Committee to Rule 4005 explained that a § 727 objector has the ultimate burden of persuasion. The evidentiary degree, i.e., by preponderance or clear and convincing evidence, to which an objector must go to sustain its burden of proof under the respective subdivisions of § 727, and when the burden of going forward may properly shift to the bankrupt, was left purposely unexplained by Rule 4005:

> This rule does not address the burden of going forward with the evidence. Subject to the allocation by the rule of the initial burden of producing evidence and the ultimate burden of persuasion, the rule leaves to the courts the formulation of rules governing the shift of the burden of going forward with the evidence in the light of considerations such as the difficulty of proving the nonexistence of a fact and of establishing a fact as to which the evidence is likely to be more accessible to the debtor than to the objector ...

Rules of Practice and Procedure in Bankruptcy Rule 4005's Advisory Committee Note (1983).

In addition to the allocation of the burden of proof, a presumption exists that all debts are dischargeable in bankruptcy unless specifically excepted by the Code. *Brown v. Felsen*, 442 U.S. 127, 128, 99 S.Ct. 2205, 2207, 60 L.Ed.2d 767 (1969), *quoting, Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934); *Gleason v. Thaw*, 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717, 719 (1915) ("nondischargeability be confined to those plainly expressed,"); *In the Matter of Kokoszka*, 479 F.2d 990, 997 (2d Cir.1973) *aff'd sub nom., Kokoszka v. Belford*, 417 U.S. 642, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974); *Household Finance Corp. v. Danns (In re Danns)*, 558 F.2d 114, 116 (2d Cir.1977).

In addition to case law, Rules of Practice and Procedure in Bankruptcy Rule 9017,

Evidence, states that "[T]he Federal Rules of Evidence and Rules 43, 44 and 44.1 F.R.Civ.P. apply in cases under the Code." Federal Rules of Evidence Rule 1101, **Applicability of Rules,** states in subparts (a) **Courts and magistrates,** "These rules apply ... to United States bankruptcy judges ..." and (b) **Proceedings generally,** "These rules apply ... to proceedings and cases under title 11, United States Code." Federal Rules of Evidence Rule 301, **Presumptions in General in Civil Actions and Proceedings,** provides:

> In all civil actions and proceedings not otherwise provided for by Act of Congress or by these rules, a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast.

Finally, in keeping the balance between the fresh start policy and preventing a dishonest debtor from avoiding through bankruptcy the consequences of wrongful pre or post-petition conduct, as mentioned in *Tabibian, supra,* Courts have ruled that the provisions denying a discharge to a debtor are to be construed liberally in the honest debtor's favor and strictly against the objecting creditor. *See, Bank of Pennsylvania v. Adlman (In re Adlman)*, 541 F.2d 999, 1003 and n. 11 (2d Cir.1976), where the Second Circuit confirmed the just stated rule in construing Bankruptcy Act § 14(c)(4) (predecessor to § 727(a)(2)):

> We begin with the well-accepted principle that the Bankruptcy Act was intended to permit the honest debtor to get a new start in life free from debt, and that section 14 of the Act must be construed strictly against the objectors and liberally in favor of the bankrupt ...

*Id.* at 1003.

> The statute, by its very nature, invokes competing considerations. On the one hand, bankruptcy is an essentially equitable remedy ... In that vein, the statutory right to a discharge should or-

dinarily be construed liberally in favor of the debtor ... On the other hand, the very purpose of certain sections of the law, like 11 U.S.C. § 727(a)(4)(A), is to make certain that those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs.

*Boroff v. Tully, (In re Tully),* 818 F.2d 106, 110 (1st Cir.1987). *Accord, In re Shebel,* 54 B.R. 199 (Bkrtcy.D.Vt.1985).

A good example of the friction between the allocation of the ultimate burden of proof on the objector and the concurrent necessity of a full examination of debtor's transactions can be found in cases considering § 727(a)(5) where a debtor may be denied a discharge for failure to explain to the satisfaction of the Court any loss or deficiency of assets. In theory, and unlike the § 14(c) proviso cases, the debtor can sit back and not present any rebuttal evidence and still survive a § 727 attack. In *Matter of Decker,*[10] 595 F.2d 185, 188 (3d Cir.1979), the Third Circuit held the absence of an explanation by the bankrupt was not enough in itself to compel a bankruptcy judge to accept the objector's uncontradicted evidence since the lower court could determine the objector had not carried the burden of proof rather than assuming it had met its initial burden from the absence of contradicting evidence. *See,* 4 *Collier's on Bankruptcy,* § 727.03, pages 727–49–727–53 (15th Ed.1986). *But see, First Federated Life Insurance Co. v. Martin (In re Martin),* 698 F.2d 883, 886–87 (7th Cir. 1983). There, in a case which involved §§ 727(a)(5) and (a)(3) proceedings, the Court held that once the creditors presented evidence that more than satisfied their burden of proof the debtor made virtually no attempt to explain the transaction, and indeed, presented no evidence after the creditors put on their case-in-chief. The panel went on to hold that "Section 727(a)(5) is broadly drawn and cleary gives a court broad power to decline to grant a discharge in bankruptcy where the debtor does not adequately explain a shortage,

loss, or disappearance of assets." *Id.,* at 886. The implication of the holding is that the debtor must always explain his actions if § 727(a)(5) is involved. While this implication flies in the face of Rule 4005, it is tempered by the Court's finding that the creditor presented more than satisfactory evidence. We think that under § 727(a)(5), as it is enacted, the debtor is required to explain any loss or deficiency in assets, but only after a creditor has presented satisfactory evidence.

Analyzing § 723(a)(3), the *Martin* Court held, citing Rule 407, that the ultimate burden of proof in a proceeding objecting to discharge lies with the plaintiff. Once sufficient evidence is presented by the objecting creditor the burden thereafter of producing additional evidence shifts to the debtor. Unless and until the debtor provides a credible explanation, a discharge should be denied. The explanation under § 727(a)(3), however, is not the same as that required under § 727(a)(5).

The Court, however, only has to decide if the § 727(a)(5) explanation is sufficient, not whether what was done was proper: "[t]he statute does not require that the debtor make a proper explanation as to a proper disposition of the assets in question." *Francis v. Riso (In re Riso), infra,* 74 B.R. 750, 760 (Bkrtcy.D.N.H.1987) (emphasis in original, *citing, Great American Insurance Co. v. Nye (In re Nye),* 64 B.R. 759, 762 (Bkrtcy.E.D.N.C.1986)).

As can be seen from the cases cited above, the Courts are divided on the appropriate degree of evidence sufficient to trigger the burden of going forward with the evidence. In a dischargeability proceeding, we are hindered by such terms as: "prima facie case," "reasonable grounds," *In the Matter of Tabibian,* 289 F.2d 793, 795, *supra;* "satisfactory evidence," *Federal Provision Co., Inc. v. Ershowsky,* 94 F.2d 574, 575, *supra;* "sufficient proof," *In re Melniker Hammock MFG. Co., Inc.,* 45 F.2d 703, 704, *supra;* and other terms mentioned below. Rule 4005 provides no guid-

---

**10.** The *Decker* Court also held that Bankruptcy Rule 407 was a valid rule under the rule making authority of the U.S. Supreme Court. For a

succinct explanation of the procedural and substantive change in the rule, *see* footnote 4, at 189.

ance on the issue. Thus, we are left to an analysis of the cases which have quite conveniently divided themselves into two camps: preponderance and clear and convincing.

## A. *Preponderance*

Blazing the trail for the preponderance camp is a line of Second Circuit cases commencing with *In re Slocum,* 22 F.2d 282 (2d Cir.1927), a false oath case [11] where a debtor falsely answered questions propounded to him during a first meeting of creditors about certain stock transactions and having received a salary some five to six years prior to the date of petition. The Bankruptcy Referee did not credit the debtor's explanation about his failure to recall such transactions when weighed against the testimony of an objecting creditor and denied his discharge. The District Court reversed, holding the inquiry too inconsequential and remote to justify a denial of Slocum's discharge, even if the bankrupt were proved to have testified falsely regarding them. The Second Circuit reversed the District Court and affirmed the referee's denial of discharge:

> It is urged further that the evidence is not sufficiently clear and convincing that the false testimony was given 'knowingly and fraudulently.' While the statute does not withhold a discharge from a bankrupt who has testify falsely through error, its benefits are intended only for honest debtors. Those who purposely answer untruthfully concerning material matters propounded upon their examination deserve no favor. It is true that it is Lederer's (creditor's) testimony against the bankrupt's. But the objecting creditors need only prove their allegations, as in other civil cases, by a fair preponderance of the evidence ... (parentheticals supplied for clarity).

*Id.,* 22 F.2d at 285. *Accord, In re Robinson,* 506 F.2d 1184, 1185 (2d Cir.1974) (affirmed the referee's conclusion that an objecting creditor had "established by a fair preponderance of the evidence that the bankrupt knowingly and fraudulently gave false testimony" in an adjourned first meeting of creditors concerning certain pre-petition statements made to creditors and rejected the bankrupt's and dissenting Circuit Judge Oakes' arguments about immateriality); *Union Bank v. Blum,* 460 F.2d 197, 200–01 (9th Cir.1972); *In re Merritt,* 28 F.2d 679, 680 (9th Cir.1928) ("Objections to discharge need not be proved beyond a reasonable doubt. A fair preponderance as in civil trials is sufficient."); *Farmers Co-op. Ass'n of Talmage, Kansas v. Strunk,* 671 F.2d 391, 395 (10th Cir.1982) (under Section 14(c) of the Bankruptcy Act "Proof of fraudulent concealment, in order to bar discharge need be shown only by a preponderance of the evidence."); *In the Matter of Mascolo,* 505 F.2d 274, 276 (1st Cir.1974) *citing, Troeder v. Lorsch (In re Troeder),* 150 F. 710, 713–14 (1st Cir.1906) (A false oath case, the Court held that even though a false oath is analogous to criminal perjury, the creditor may prove his case by a preponderance.); *Gabrielli v. Shults (In re Shults),* 28 B.R. 395, 396 (9th Cir. BAP 1983) (mere preponderance was sufficient under either §§ 727(a)(2) or 727(a)(4)(A)).

Chittenden directs our attention to *Francis v. Riso (In re Riso),* 74 B.R. 750, 757 (Bkrtcy.D.N.H.1987). There, Bankruptcy Judge Yacos adopts the analysis set forth in *Cowan v. Curl (In the Matter of Curl),* 49 B.R. 302, 304–06 (Bkrtcy.W.D.Mo.1985) and concludes preponderance of the evidence under § 727(a)(2)(A) is the appropriate standard since objecting creditors are also entitled to a presumption of fraudulent intent after they establish a gratuitous transfer of assets was made under the shadow of bankruptcy. *Cowan, supra,* n.

---

**11.** The statute relied upon by the *Slocum* Court involved a predecessor to § 727(a)(4)(A):

> The words descriptive of an offense which will preclude a discharge refer to section 29 (11 U.S.C. § 52). Paragraph (b) of that section provides:

> (b) A person shall be punished, by imprisonment ... upon conviction of the offense of having knowingly and fraudulently (1) concealed ...; or (2) made a false oath or account in, or in relation to, any proceeding in bankruptcy ...

*Id.,* 22 F.2d at 283–84.

6 at 304–06, dealt, however, with § 523 and not § 727. After noting an "almost historical accident" that caused Courts to use a clear and convincing rather than the preponderance standard in fraud cases, the *Cowan* Court thus refused to take a stand on the appropriate standard. Instead, *Cowan* opted to test the creditor's evidence against the higher standard of clear and convincing evidence to avoid reversal:

> Nevertheless, in the action at bar, this court has applied the 'clear and convincing evidence' standard to ensure against any possible error in this regard.

*Id.*

Other Bankruptcy Court decisions representative of the preponderance camp include: *Cobb v. Hadley (In re Hadley)*, 70 B.R. 51, 53 (Bkrtcy.D.Kan.1987); *Kunce v. Kessler (In re Kessler)*, 51 B.R. 895, 898–899 (Bkrtcy.D.Kan.1985) (preponderance of the evidence burden on movant for both §§ 727(a)(2) concealment and (a)(4)(A) false oath); and, *Conti–Commodity Services, Inc. v. Clausen (In re Clausen)*, 44 B.R. 41, 45 (Bkrtcy.D.Minn.1984) (cited favorably by *Riso, supra,* simply assumed "Case law states that the creditor need only prove its case by preponderance of the evidence.") See also, *In re Perlmutter*, 256 F. 862, 863 (D.N.J.1919) (". . . a clear preponderance of the evidence is sufficient to prove them."); *In re Doyle*, 199 F. 247, 255 (W.D.N.Y.1912) (held fair preponderance sufficient to bar discharge).

### B. *Clear and Convincing Standard*

In *Oriel v. Russell*, 278 U.S. 358, 362–363, 49 S.Ct. 173, 174, 73 L.Ed. 419, 423–24 (1929), the Supreme Court, in reference to a debtor's failure to comply with a referee's order directing the debtor to turnover certain accounting books to the bankruptcy trustee, in what would be a § 727(a)(3) proceeding today, rejected both the preponderance and beyond a reasonable doubt standard and held the turnover order had to be established by a clear and convincing evidence and, once established as such, could not be collaterally attacked in a subsequent contempt proceeding to enforce the turnover order:

> **We think a proceeding for a turnover order in bankruptcy is one the right to which should be supported by clear and convincing evidence.** The charge upon which the order is asked is that the bankrupt, having possession of property which he knew should have been delivered by him to the trustees, refuses to comply with his obligation in this regard. **It is a charge equivalent to one of fraud, and must be established by the same kind of evidence required in a case of fraud in a court of equity. A mere preponderance of evidence in such a case is not enough.** The proceeding is one in which coercive methods by imprisonment are probable and are foreshadowed. The referee and the court, in passing on the issue under such a turnover motion, should, therefore, require clear evidence of the justice of such an order before it is made . . . **With reference to the character or degree of proof in establishing a civil fraud, the authorities are quite clear that it need not be beyond a reasonable doubt, because it is a civil proceeding . . . The court ought not issue an order lightly or merely on a preponderance of the evidence, but only after full deliberation and satisfactory evidence . . .**

*Id.* (emphasis ours).

In *In re Doyle, supra,* 199 F. 247, 255 (W.D.N.Y.1912), a member of the preponderance camp, the Court cited *In re Dauchy*, 122 F. 688 (N.D.N.Y.1903), to support its position that a "fair" preponderance of the evidence was sufficient to establish fraudulent concealment. While the *Dauchy* District Court's grant of discharge to the debtor was affirmed by the Second Circuit after the *Doyle* Court's ruling, the Second Circuit tested the *Dauchy* District Court's holding against the higher standard of clear and convincing and not by a mere preponderance:

> In order to establish a fraudulent concealment, it must appear that the property concealed belongs to the bankrupt's estate. It must be shown that the transfer was merely a temporary expedient to place the property beyond the reach of the trustee, the title to be resumed by

the bankrupt as soon as prudence will permit. In other words, it must be proved that a secret trust exists in her favor, and that her son is under agreement, expressed or implied, to reconvey the property to her when the danger of attack by the creditors has passed. Were we permitted to indulge in speculation and guesswork and to substitute suspicion for proof it would not be difficult to sustain the creditor's contention, but **the burden is upon them to establish by clear and convincing evidence that the bankrupt has been guilty of the offenses alleged.**

*In re Dauchy,* 130 F. 532, 533 (2d Cir.1904) (emphasis supplied). The continual vitality of the Western District of New York's preponderance holding in *Doyle, supra,* remains doubtful after the Second Circuit's holding in *Dauchy, supra.* Indeed, the Northern District of New York in *In re Wakefield,* 207 F. 180, 183 (N.D.N.Y.1913), acknowledged that clear and convincing proof was required for denial of discharge on the grounds of concealment of property.

Thirty-four years after *Dauchy,* the Second Circuit reversed a denial of discharge for false oath from an omission of exempt and near valueless insurance policies from debtor's schedules in the absence of "clear" proof:

The mere omission of property from the schedules, or the failure to include a creditor, does not necessarily establish a fraudulent intent upon the part of the bankrupt ... In the absence of **clear proof** of fraudulent intent, we do not think a bankrupt should be denied his discharge ...

*In re Taub,* 98 F.2d 81, 82 (2d Cir.1938) (emphasis supplied). *Accord, Bank of Pennsylvania v. Adlman (In re Adlman), supra,* 541 F.2d at 1005 (2d Cir.1976). The Second Circuit reversed the lower Court for erring as a matter of law by concluding that the debtor had actual intent to defraud a creditor from the fact of payment "[a]bsent **convincing evidence** of extrinsic fraud ..." *Id.* (emphasis supplied). Circuit Judge Moore dissented, arguing "Once evidence established some reasonable ground to believe that the bankrupt acted

with intent to defraud creditors ... the burden of proof shifted to the bankrupt to demonstrate to the court's satisfaction that a discharge was warranted." *Id.,* at 1006–1007. *See also, Ford v. Poston (In re Ford),* 53 B.R. 444 (W.D.Va.1984), *affirmed,* 773 F.2d 52 (4th Cir.1985), holding if the party objecting under § 727(a)(2) has established a reasonable ground for denial by clear and convincing evidence, then the burden of going forward with the evidence shifts to the debtor. *Id.* at 449; *Camacho v. Martin (In re Martin),* 88 B.R. 319, 321 (D.Colo.1988), "[T]he grounds for excepting a debt from discharge under § 727 must be established by clear and convincing evidence," *citing, Booth v. Booth (In re Booth),* 70 B.R. 391, 394 (Bkrtcy.D.Colo. 1987), "An attack on dischargeability under Section 727 is much more severe in its effect than excepting a single debt from discharge under Section 523. Because of this severity ... it is this Court's view that the clear and convincing standard must apply in establishing proof if nondischargeability." *Id.* Curiously, neither the District Court in *Camacho,* nor the Bankruptcy Court in *Booth,* distinguish *Farmers Co-op. Ass'n of Talmage, Kansas v. Strunk, supra,* 671 F.2d 391, 395 (10th Cir.1982), for the latter's holding that a mere preponderance of the evidence is sufficient to establish a false oath under Section 14(c) of the Bankruptcy Act's predecessor of § 727. *Booth* did, however, cite *Strunk* for the proposition that "[a] finding of actual intent can be based on circumstantial evidence or on inferences drawn from the debtor's conduct." *Id.,* 70 B.R. at 395. *See also, Spraque, Thall & Albert v. Woerner (In re Woerner),* 66 B.R. 964, 972 n. 9 (Bkrtcy.E.D.Pa.1986), *aff'd,* CA 86–7324 (E.D.Pa. April 28, 1987), which held clear and convincing was the appropriate standard under 727(a)(4) and criticized the Second Circuit's preponderance holding in *In re Robinson, supra,* 506 F.2d 1184 (2d Cir.1974) for lack of discussion or analysis where fraud is alleged as a "mere affirmation of the Bankruptcy Referee's finding." *Accord, McNulty v. Sullaway (In re Sullaway),* 66 B.R. 320, 321 (Bkrtcy.D.Mass.

1986). The *McNulty* Court applied a clear and convincing standard to find the creditor had established a denial of discharge for knowingly and willfully making a false oath under § 727(a)(4)(A).[12] *See also, Fox v. Cohen (In re Cohen)*, 47 B.R. 871, 874–75 (Bkrtcy.S.D.Fla.1985), where the creditor failed to establish by "clear, cogent and convincing evidence" that the debtor conducted himself in any manner as to warrant a denial of discharge under §§ 727(a)(2), (3), (4), and (5). *But see, Taylor v. Lineberry (In re Lineberry)*, 55 B.R. 510, 513 (Bkrtcy.W.D.Ky.1985) (The standard of explanation by which a debtor explains a loss or deficiency is one of reasonableness or credibility.) The *Taylor* Court also joined the clear and convincing camp on the creditor's burden. *See, In re Schnabel*, 61 F.Supp. 386, 395 (D.Minn. 1945), *citing, Remmers v. Bank*, 173 F. 484 (8th Cir.1909) for the proposition that a denial of discharge for false oath required clear and convincing evidence rather than the degree of proof required in a criminal prosecution; *Peoples State Bank of Mazeppa, Mn. v. Drenckhahn (In re Drenckhahn)*, 77 B.R. 697, 701 (Bkrtcy.D.Mn.1987) ("The objecting creditor bears the initial burden of proof, which is a heavy one."); *Same, Citizens Fidelity Bank and Trust Co. v. Schermer (In re Schermer)*, 59 B.R. 924, 925 (Bkrtcy.W.D.Ky.1986). *See also, In re Johnson*, 82 B.R. 801, 804 (Bkrtcy.E. D.N.C.1981) (The standard to establish a § 523 exception to discharge is clear and convincing evidence and is applicable to objections to discharge as well.) *See also, In re Garcia*, 88 B.R. 695 (Bkrtcy.E.D.Pa. 1988).

We, as a Court, are often faced with the difficult task of squaring irreconcilable policy statements. Congress enacted the Bankruptcy Code in furtherance of a "fresh start" for debtors, but only for honest debtors. Section 727 is the heart of the debtor's fresh start because it grants discharge in bankruptcy. On the other hand, the nondischargeability provisions of § 727 are in place to prevent dishonest debtors from using their "fresh start" to the detriment of honest creditors.

As can be seen from the foregoing analysis, a significant and often litigated issue was the allocation of the burden of proof. Resolved by former Rule 407 and now embodied in Rule 4005 we know that the burden of proof is on the plaintiff objecting to discharge. See 8 *Collier's on Bankruptcy*, paragraph 4005 at 4005–1 to 4005–2 (15th Ed.1988). Rule 4005 is silent, however, on the standard to be applied, that is, is the burden by a preponderance or is it by clear and convincing evidence?

The legislative history to § 727, *See* H.R. Rep. No. 95–595, 95th Cong., 2d Sess. 384 (1977); S.Rep.No. 95–989, 95th Cong., 2d Sess. 98–99 (1979), cited in *Norton Bankruptcy Law and Practice*, pp. 534–535 (1988–89 Ed.), is sparse and in our view, now, inconclusive. In an earlier decision issued by this Court, *In re Shebel*, 54 B.R. 199, supra, we held in the context of a § 727(a)(4)(A) proceeding, a false oath case, that the objecting creditor must prove by a preponderance of the evidence that the debtor made the false statement (oath). We relied principally on the language in the legislative history that "the standard of proof (in a false oath case) is preponderance of the evidence rather than proof beyond a reasonable doubt." (parentheticals for clarity). *Id.*, at 535. Upon further reflection, however, we now think this legislative history is not setting a standard of proof, but instead, is telling us that a false oath case, although akin to perjury, need not be tested by the traditional criminal standard of beyond a reasonable doubt. Thus, we conclude the legislative history, like the advisory note to Rule 4005, leaves the decision about what burden to apply to the Court.

As we have shown above, the Courts have divided themselves in two camps: clear and convincing, and preponderance.

---

**12.** The Court in *Sullaway* applied the clear and convincing standard although it cited the preponderance Circuit cases of *Mascolo, supra*, 505 F.2d at 276 (1st Cir.1974) and *Slocum, supra*, 22 F.2d at 285 (2d Cir.1927). *Sullaway's* reference to *Mascolo* and *Slocum* was not for their evidentiary burden ruling, rather, it was for their rationale in denying a discharge for a debtor's failure to disclose material financial matters.

The Second Circuit has joined both camps, *In re Robinson, supra,* (preponderance) and *Bank of Pennsylvania v. Aldman, supra,* (clear and convincing), with the Supreme Court in *Oriel v. Russell, supra,* holding that proof of a failure to turnover books of account by a debtor must be by clear and convincing evidence. The Court said such a proceeding was a "charge equivalent to one of fraud, and must be established by the same kind of evidence in a case of fraud in a court of equity. A mere preponderance of evidence is not enough." 278 U.S. at 362, 49 S.Ct. at 174, 73 L.Ed. at 424.

Many of the cases which conclude that the burden of proof under § 727 is by a preponderance rely extensively on decisions under the Act, § 14(c), and its proviso, "... the objector shall show to the satisfaction of the court that there are *reasonable* grounds ...," for example, *See, Morris Plan Industrial Park,* 149 F.2d at 592; *Diorio,* 407 F.2d 1130; and *Re Robinson,* 506 F.2d at 1185, *supra.*

Those cases which hold that clear and convincing evidence is required rely on a lengthy line of cases which place the non-dischargeability provisions in the same category as fraud complaints, and then conclude that the burden of proof is by clear and convincing evidence. *See, In re Dauchy, In re Locust Building Co.,* 299 F. 756, 765 (2d Cir.1924), *cert. denied,* 265 U.S. 590, 44 S.Ct. 635, 68 L.Ed. 1195 (1924) (The general rule is that fraud must be made out by a preponderance of evidence which should be so clear and strong as to preponderate over the general and reasonable assumption that men are honest and do not ordinarily commit fraud or act in bad faith) and more recently, *Bank of Pennsylvania v. Aldman, supra.*

We are not aided in our search when we read cases involving fraud which use terms as "the proof (must be) *clear and strong enough to preponderate*" (parentheticals supplied for clarity); *In re Locust,* at 765, *supra;* "clear and satisfactory," *Lalone v. United States,* 164 U.S. 255, 17 S.Ct. 74, 41 L.Ed. 425 (1896); "sufficient proof," *In re*

*Melnicker Hammock, supra;* "reasonable grounds," *Matter of Tabibian, supra;* and "satisfactory evidence," *Federal Provision, supra.*

Nor may it be concluded that all States and all Federal decisions hold that fraud must be shown by clear and convincing evidence. As the lead sentence in the C.J. S.2d article on the weight and sufficiency of proving fraud states: "Fraud must be established by a preponderance of the evidence," 37 C.J.S.2d, § 114 (West 1988). That article, and the one in Am.Jur.2d, Fraud and Deceit, 37 Am.Jur.2d, § 468, both cite numerous cases which hold that at least a preponderance of the evidence is required to prove civil fraud. *See, Re Delligan's Estate,* 111 Vt. 227, 13 A.2d 282 (1940). *But see, Lyndonville Savings Bank and Trust Co. v. Peerless Insurance Co.,* 126 Vt. 436, 439, 234 A.2d 340 (1967) (In this false pretense case the court held the measure of proof required in Vermont to establish a criminal charge in a civil proceeding is by a preponderance of the testimony.)

As Judge Steward in *Matter of Curl,*[13] *supra,* in footnote 6, ably said:

> This division (on the burden of proof) continues to plague the bankruptcy process, despite the fact that, at least under the modern Bankruptcy Code, the bankruptcy courts were to develop a general law of bankruptcy which would be uniform so that the resolution of the issues in dischargeability cases would not depend upon the differences between the laws of the state.

*Matter of Curl,* 49 B.R. 302, 305, fn. 6.

In many respects, the cases on § 727 are unreconcilable. As a Court, however, we are required to make decisions and issue Orders. We do not now shy away from that responsibility.

A § 727 nondischargeability complaint is a cataclysmic attack on a debtor's fresh start. The successful result of such an attack is to deprive the debtor of his entire "fresh start." Compared to the nondischargeability result of a successful

---

**13.** *Matter of Curl* is a § 523(a) case, but the footnote cited is appropro to the § 727 issue.

§ 523(a) attack, a successful § 727 proceeding is the equivalent of all out nuclear war on the debtor. On an analogous basis a § 727 complaint is permeated with the indicia of fraud.

The Supreme Court of the United States, to our knowledge, has spoken only once on the burden of proof in a dischargeability case and that was in *Oriel v. Russell.* There, in a turnover of books action, the Court required the moving trustee to prove the action by clear and convincing evidence, *id.,* 278 U.S. at 362, 49 S.Ct. at 174, 73 L.Ed. at 424. In a suit by the United States to recover money paid to a pensioner allegedly paid over by fraud, the United States Supreme Court in *Lalone v. United States,* 164 U.S. 255, 257, 17 S.Ct. 74, 75, 41 L.Ed. 425, 426 (1896) held:

> In all proceedings instituted to recover moneys or to set aside and annual deed or contracts or other written instruments on the ground of alleged fraud practiced by a defendant upon a plaintiff, the rule is of long standing and is of universal application, that the evidence lending to prove the fraud and upon which to found a verdict or decree must be clear and satisfactory. It may be circumstantial, but it must be persuasive. A mere preponderance of evidence which at the same time is vague or ambiguous is not sufficient to warrant a finding of fraud, and will not sustain a judgment based on such findings.

*Id.,* 164 U.S. at 257, 17 S.Ct. at 75, 41 L.Ed. at 426.

*Compare, Atlantic Delaine Company v. Lucinda James,* 94 U.S. 207, 24 L.Ed. 112, 114–115 (1877) (fraud must be clearly proved).

Consistent with our analysis we are aware of our holding in *In re Barrup, supra,* that exceptions to discharge are construed narrowly; *In re Leichter,* 197 F.2d 955 (3rd Cir.1952), *cert. denied,* 344 U.S. 914, 97 L.Ed. 705, 73 S.Ct. 336 (1953). The remedy of denial of discharge is particularly severe, because it precludes the debtor from obtaining any relief from its creditors at the conclusion of its case. Moreover, a § 727 action is uniquely a Federal cause of action. Federal common law must apply.

In the absence of Congressional guidance, the unreconcilable conflict among the cases, and only one analogous United States Supreme Court case on the subject, we hold that clear and convincing evidence is the appropriate standard by which a creditor succeeds in an 11 U.S.C. § 727 complaint.

Finally, under § 727(a)(5), after a creditor has provided sufficient evidence to shift the production of evidence to the debtor, the debtor must explain satisfactorily the loss or deficiency of any assets to satisfy liabilities.